IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Johnnie Frazier, ) | C/A No.: 1:14-1091-TMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Lt. June; Ofc. Martinez; Lt. Kirkland; ) | REPORT AND RECOMMENDATION |
| Michael McCall, Dir. of Programs; Ofc. ) | |
| Hunter; Sgt. Williams; Cpl. Wilson; Lt. ) | |
| Bowman; Sgt. Bozwell; Nurse Brown; ) | |
| Nurse Irving; Lt. Marquez, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Johnnie Frazier, proceeding pro se and in forma pauperis, is incarcerated at Lee Correctional Institution ("LCI") in the custody of the South Carolina Department of Corrections ("SCDC"). He filed his complaint pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights by the following LCI officers: Lieutenant June, Officer Martinez, Lieutenant Kirkland, Michael McCall, Officer Hunter, Sergeant Williams, Corporal Wilson, Lieutenant Bowman, Sergeant Bozwell, Nurse Brown, Nurse Irving, and Lieutenant Marquez (collectively "Defendants").

This matter comes before the court on Defendants' motion for summary judgment. [ECF No. 31]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 32]. The motion having been fully briefed [ECF No. 38], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule

73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Because this motion is dispositive, the undersigned submits this report and recommendation for the district judge's consideration. For the following reasons, the undersigned recommends Defendants' motion [ECF No. 31] be granted in part and denied in part.

I.     Factual and Procedural Background

On May 25, 2012, officers conducted a shakedown of Plaintiff's cell in the Special Management Unit ("SMU") of LCI. [ECF No. 1 at 3]. As part of the search procedure, inmates are brought out of their cell in handcuffs and required to sit by the door in the hallway while the officers search the cell for contraband. Marquez Aff. at ¶ 3.[1] According to Marquez, Plaintiff was disruptive during the search and persistently tried to stand up. *Id*. at ¶ 5. Plaintiff became upset when Martinez took his Bible as part of the search. [ECF No. 1 at 3]. Marquez states that Plaintiff refused to place his hands in the door flap of his cell for his handcuffs to be removed. Marquez Aff. at ¶ 7. Plaintiff alleges that Martinez and Marquez pinned him against the wall outside of his cell and Kirkland sprayed him in the eyes and ear with chemical munitions. [ECF No. 1 at 4]. Plaintiff claims that Marquez and Martinez kicked him in his sides and back until he was incapacitated. *Id*. Plaintiff alleges one of them stood on his back, while the other placed his knee on Plaintiff's head "smashing it to the concrete." *Id*.

Plaintiff claims that he was left on the floor in pain "for an indeterminate amount of time" until June grabbed him by the wrist restraints and forced him to his feet, causing

---

[1] The affidavit of Officer Nicholas Marquez may be found at ECF No. 31-3.

him extreme pain. Plaintiff alleges he was then shoved inside of the cell where he "immediately fell to the floor in agony." *Id.* at 5. Plaintiff alleges that June attached a nylon dog leash to Plaintiff's handcuffs behind his back and ran the other end through flap. Plaintiff alleges he was then dragged to the door flap and his handcuffs were removed. *Id.*

Plaintiff claims that the water in his cell had been turned off in the morning. *Id.* Plaintiff alleges that he was not provided any form of decontamination until the water was turned on "late that night." Plaintiff claims he was denied medical treatment in the days following the incident. *Id.* at 6. Plaintiff alleges he still has not received adequate treatment for injuries to his eyes, ear, and back. *Id.*

According to Kirkland and Marquez, Plaintiff was "checked out" on the scene by medical personnel who found no injury. Kirkland Aff. at ¶ 4; Marquez Aff. ¶ 8. Plaintiff's medical records contain an entry dated July 12, 2012, stating that Plaintiff was seen "@ 2100" after a use of force on May 25, 2012.[2] [ECF No. 31-8 at 4]. There were no signs of acute distress and Plaintiff was advised to flush his water and skin every 15 minutes. *Id.* The use of force report from the incident is not signed by medical personnel. [ECF No. 31-5].

II.   Discussion

   A.   Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a

---

[2] According to the incident report, the use of force occurred at approximately 11:50 a.m.

matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.  Analysis

1.  Excessive Force/Denial of Decontamination

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim. Specifically, Plaintiff must prove that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, because "'[w]hen prison officials maliciously and sadistically use force to cause harm' . . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322.

5

Federal courts closely scrutinize the use of tear gas or mace in correctional facilities. *See, e.g., Bailey v. Turner*, 736 F.2d 963 (4th Cir. 1984); *Greear v. Loving*, 538 F.2d 578 (4th Cir. 1976). Even when properly used, such weapons "possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). Accordingly, although it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment." *Bailey*, 736 F.2d at 969; *see also, Justice v. Dennis*, 834 F.2d 380, 383 (4th Cir. 1987) (en banc), *vacated on other grounds*, 490 U.S. 1087 (1989).

Mace and pepper spray can be constitutionally used in small quantities to control a "recalcitrant inmate." *Bailey*, 736 F.2d at 968–69. A limited application of chemical munitions may be "much more humane and effective than a flesh to flesh confrontation with an inmate," and prompt washing of the affected area of the body will usually provide immediate relief from pain. *Soto v. Dickey*, 744 F2d 1260, 1270 (7th Cir. 1984). Because a limited use of mace constitutes a relatively "mild" response compared to other forms of force, the initial application of mace indicates a "tempered" response by the prison officials. *Williams v. Benjamin*, 77 F3d 756, 763 (4th Cir. 1996).

The Supreme Court has directed courts to balance several factors in determining whether prison officials act maliciously and sadistically. These factors include (1) the need for the application of force; (2) the relationship between the need and the amount of

6

force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321.

Defendants' use of force was reasonable, as Plaintiff does not deny that he did not comply with the officers' orders to return to the cell flap to have his restraints removed. The amount of force was related to the need for the force, as Defendants continued to use force only until they were able to force Plaintiff to the flap to have his restraints removed pursuant to procedure. Although Plaintiff claims he was in extreme pain and suffered injuries to his eyes, ear, and back, a review of his medical records reveals that his back problems were not substantially worse after the incident, and there was no apparent damage to his eyes or ears. [ECF Nos. 31-8 at 4–6, 31-9 at 1, 5, 6, 12–13, 16]. Defendants reasonably perceived a threat to staff and other prisoners, as Plaintiff was refusing to comply with direct orders. Therefore, an analysis of the first four *Whitley* factors indicates Defendants' use of force, standing alone, was not excessive.

With regard to the final *Whitley* factor, the facts do not demonstrate that Defendants took any efforts to temper the severity of the force. Plaintiff denies that he received medical attention. Although a medical entry dated July 12, 2012, indicates that Plaintiff was seen by medical personnel [ECF No. 31-8], it appears to be over nine hours

7

after Plaintiff was sprayed.[3] Most importantly, Plaintiff alleges he was not offered an opportunity to wash the chemical munitions off of his body.

Viewing the facts in the record in the light most favorable to Plaintiff, the undersigned finds that Defendants are not entitled to summary judgment to the extent Plaintiff has alleged an Eighth Amendment violation for their having denied him medical care and an opportunity to decontaminate. *See Mann v. Failey*, 578 F. App'x 267 (4th Cir. 2014) (finding a potential Eighth Amendment violation where the plaintiff alleged he was in pain for several hours without being allowed to decontaminate) (citing *Williams v. Benjamin*, 77 F.3d 756, 765–68 (4th Cir. 1996)). However, the undersigned recommends Defendants be granted summary judgment on the use of force itself, including the use of chemical munitions.

    2.    Deprivation of Property

Plaintiff also alleges that Martinez and Marquez violated his constitutional rights by confiscating his Bible. Marquez states that inmates housed in SMU are limited in the personal items they may possess. Marquez Aff. at ¶ 4. Marquez further states that any books taken from Plaintiff because they exceeded limits would be placed in storage and available to him once Plaintiff's property did not exceed the limits. *Id*. at ¶ 5.

In *Turner v. Safley*, 482 U.S. 78 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Id*. at 89. The Court also recognized that deference

---

[3] Although Kirkland and Marquez stated that Plaintiff was offered medical personnel (Kirkland Aff. at ¶ 4; Marquez Aff. at ¶ 8), Plaintiff denied such claims. The undersigned must view the facts in the light most favorable to Plaintiff, as the non-moving party.

8

should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id.* In *Turner*, the Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Id.* at 89–90.

Defendants argue that the regulation is related to the legitimate governmental objective of maintaining security in an area housing inmates that are security threats. [ECF No. 31-1 at 10]. Plaintiff has an alternative remedy, as he can retrieve his property by exchanging other property currently in his cell for the stored property. *Id.* Accommodating Plaintiff's right would require the prison to allow every inmate in SMU to maintain more property than prison officials have determined is safe. Finally, Plaintiff has not provided any easy and obvious alternatives. Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's claim for unconstitutional deprivation of property.

### 3. Eleventh Amendment Immunity

Defendants argue they are entitled to Eleventh Amendment immunity. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state

9

agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* Defendants are employees of the SCDC. As a result, Defendants are entitled to Eleventh Amendment immunity to the extent Plaintiff has alleged claims for monetary relief against them in their official capacities. However, Plaintiff's claims for monetary relief against Defendants in their individual capacities or injunctive relief against Defendants in their official capacities remain.

          4.        Qualified Immunity

Defendants assert that they are entitled to qualified immunity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by this immunity. The *Harlow* court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Id*. at 298.

Here, a question of fact exists as to whether Defendants violated Plaintiff's constitutional rights in denying him medical care or allowing him to decontaminate after he was sprayed with chemical munitions. At this stage in the litigation, it is unclear whether Defendants violated a clearly-established right of Plaintiff. Therefore, Defendants are not entitled to summary judgment on the basis of qualified immunity.

11

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment [ECF No. 31] be denied as to Plaintiff's denial of decontamination and medical care after he was sprayed with chemical munitions and granted on Plaintiff's remaining claims.

IT IS SO RECOMMENDED.

July 7, 2015                                              Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).