IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Johnnie Frazier, | ) | |
| | ) | C/A No. 1:14-1091-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Lt. June; Ofc. Martinez; | ) | |
| Lt. Kirkland; Michael McCall | ) | |
| Ofc. Hunter; Sgt. Williams; Cpl. | ) | |
| Wilson; Lt. Bowman; Sgt. Bozwell; | ) | |
| Nurse Brown; Nurse Irving; and | ) | |
| Lt. Marquez, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Johnnie Frazier, a state prisoner proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, alleging claims of excessive force, deliberate indifference to his serious medical needs, deprivation of property, and denial of his religious freedom. The Defendants Lt. June; Ofc. Martinez, Lt. Kirkland, Michael McCall, Ofc. Hunter, Sgt. Williams, Cpl. Wilson, Lt. Bowman, Sgt. Bozwell, Nurse Brown, Nurse Irving, and Lt. Marquez (herein referred to collectively as "Defendants") filed a summary judgment motion. (ECF No. 31). Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that Defendants' Summary Judgment Motion be granted in part and denied in part. (ECF No. 39).[1] Both Plaintiff and Defendants timely filed objections to the Report. (ECF Nos. 41 and 42).[2]

---

[1] In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, D.S.C., this matter was referred to a magistrate judge for pretrial handling.

[2] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court

## I. Facts/Background

On May 25, 2012, at approximately 11:50 a.m., officers at the Lee Correctional Institution ("LCI") conducted a shakedown of Plaintiff's cell in the Special Management Unit ("SMU") of the LCI. During the search of his cell, Plaintiff was restrained with handcuffs and required to sit by his cell door in the hallway. (ECF No. 1 at 3, Compl. at 3). According to Lt. Marquez, Plaintiff was disruptive during the search and repeatedly tried to stand up. (ECF No.31-3 at ¶ 6, Marquez Aff. ¶ 6). During the search, Lt. Martinez confiscated Plaintiff's books and a Bible, which angered Plaintiff. (Compl. at 3).

Plaintiff alleges that Ofc. Martinez and Lt. Marquez pinned him against the wall outside of his cell and Lt. Kirkland sprayed him in the eyes and ears with chemical munitions. (Compl. at 4). Plaintiff also alleges that Ofc. Martinez and Lt. Marquez knocked his feet from under him and began to kick and stomp him in his sides and back until he was incapacitated. *Id.* Plaintiff alleges one of them stood on his back, while the other placed his knee on his head "smashing it to the concrete." *Id.* Plaintiff alleges he was restrained in leg and wrist manacles and surrounded by officers. *Id.* Plaintiff alleges that he was left on the floor in pain "for an indeterminate amount of time" until June grabbed him by the wrist restraints and forced him to his feet, causing him extreme pain. *Id.* Plaintiff alleges he was maliciously shoved inside of his cell. (Compl. at 5). Plaintiff alleges that Lt. June then attached a nylon dog leash to Plaintiff's handcuffs behind his back and ran the other end through flap on the door and June dragged Plaintiff to the door flap and his handcuffs were removed. *Id.*

The water in Plaintiff's cell had been turned off that morning, and Plaintiff alleges that he

---

may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

was not provided medical treatment or any way to wash the chemical munitions out of his eyes and ears. *Id.* Plaintiff alleges that he was able to rinse off the chemical munitions once the water was turned on "late that night." *Id.* Plaintiff also alleges that despite repeated requests, he was denied medical treatment in the days following the incident. (Compl. at 6). Plaintiff alleges he still has not received adequate treatment for injuries to his eyes, ear, and back. *Id.*

Lt. Marquez avers that if books were taken from Plaintiff's cell, they were placed in Plaintiff's property and available to him when he returned to the general population or when possessing them would not exceed the allowable limits in place at that time. (Marquez Aff. at ¶5). Lt. Kirkland states that Plaintiff refused to close the door flap of his cell and Lt. Marquez avers Plaintiff failed to follow directives to place his hands in his flap for his handcuffs to be removed. (ECF No, 31-2 at ¶ 3, Kirkland Aff. at ¶ 3; Marquez Aff. at ¶ 7). To gain his compliance with their directives, Lt. Kirkland maced Plaintiff. *Id.* Lt. Kirkland and Lt. Marquez deny Plaintiff was beaten or stuck and aver that Plaintiff was checked out on the scene by medical personnel who found no injury. (Kirkland Aff. at ¶ 4; Marquez Aff. ¶ 8). Plaintiff's medical records contain an entry dated July 12, 2012, stating that Plaintiff was seen by a nurse at 9:00 p.m. after a use of force on May 25, 2012. (ECF No. 31-8 at 4). It was noted that there were no signs of acute distress and Plaintiff was advised to flush his water and skin every 15 minutes. *Id.* On May 25, 2012, Lt. Kirkland completed a "Report on the Use of Force," which included the following statement from Lt. Kirkland:

> Inmate Johnny Frazier SCDC# 265586 refused all directives to take flap down from door. I then administered a 1 to 2 second burst of Sabre Red.
>
> Starting Weight 343 grams
> Ending Weight 244 grams
> Total Amount Used 99 grams

3

(ECF No. 31-5).[3] The section to be filled out by a Qualified Medical Staff Member is blank. (ECF No. 31-5).

## II.  Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

## III. Discussion

In her Report, the magistrate judge recommends that Defendants be granted summary judgment on the use of force claim, including the use of chemical munitions, and the deprivation fo property claim, but not on the claims that Defendants denied him medical care and an opportunity to decontaminate.  Additionally, the magistrate judge determined that Defendants

---

[3]Sabre Red is a pepper spray. *See Simmons v. Byars*, C/A No. 5:13-cv-2754-RMG, 2014 WL 3671308, *5 n. 1. (D.S.C. July 22, 2014).

are entitled to Eleventh Amendment immunity to the extent Plaintiff has alleged claims for monetary relief against them in their official capacities, but not as to Plaintiff's claims for monetary relief against Defendants in their individual capacities or injunctive relief against Defendants in their official capacities. Finally, the magistrate judge found that Defendants were not entitled to qualified immunity as to the claims of medical indifference.

### A. Plaintiff's Objections[4]

In his objections, Plaintiff contends that the magistrate judge erred in recommending that Defendants be granted summary judgment on the excessive force claim because he alleges he was in compliance with Lt. Marquez. (ECF No. 41 at 1, Pl.'s Objections at 1). Furthermore, he notes that he was handcuffed, shackled, and surrounded by at least fifty (50) officers. *Id.* As to the deprivation of property claims, he alleges that he had his Bible and two (2) other books in his cell. He notes that Defendants state he had too many books, but he argues that Defendants do not state what the limit was at the time, and Defendants failed to inventory the books they took from his cell. *Id.* He states that SCDC policy allows him to possess a religious book and he was surely not over the limit with a Bible and two (2) other books. (Pl.'s Objections at 2). Plaintiff

---

[4]The magistrate judge determined that Plaintiff's § 1983 claims for money damages against Defendants in their official capacities are barred pursuant to Eleventh Amendment Immunity. Plaintiff did not object to this recommendation. In the absence of a timely filed, specific objection - or as to those portions of the magistrate judge's recommendation to which no specific objection is made - this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed.R.Civ.P. 72 advisory committee note). Moreover, absent specific objections, this Court need not provide any explanation for adopting the magistrate judge's analysis and recommendation. *See Camby v. Davis,* 718 F.2d 198, 199-200 (4th Cir.1983). Here, there is no dispute that Defendants were employees of the SCDC at the time of the allegations in the complaint. Thus, finding no clear error, the court agrees with the magistrate judge's determination that Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

disputes that he was seen by a nurse that day. *Id.* Plaintiff also contends that the use of 99 grams of gas on an inmate in restraints is not within SCDC policy. *Id.* Finally, Plaintiff questions the truthfulness of the medical entry which states he was seen by a nurse on May 25, 2012, but was not entered until July 12, 2012. *Id.*

### B. Defendants' Objections[5]

Defendants contend that the magistrate judge erred in treating Plaintiff's allegations that he was not provided a way to wash the chemicals off and he was not seen by medical as a continuation of the excessive force claim. (ECF No. 42 at 2, Defs.' Objections at 2). Defendants contend that Plaintiff actually alleges the denial of medical care. *Id.* And Defendants contend that, despite Plaintiff's denial, "records and testimony indicates he was seen at the scene and re-examined for this complaints allegedly arising from this use of force." *Id.* Further, they note that Plaintiff admits the water to his cell was turned on that same day. *Id.*

### C. Analysis

**1. Excessive Force Claim**

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently

---

[5] The court notes Defendants do not object to the magistrate judge's recommendations that the Defendants are not entitled to qualified immunity. (Report at 10-11). Accordingly, the court reviews it for clear error and, finding none, the court adopts the magistrate judge's recommendation that Defendants not be granted qualified immunity.

6

serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*citing Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendants struck him and used chemical munitions on him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting. In *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir. 1984), the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, prison officials may use mace to compel the obedience of a recalcitrant prisoner. *Id.* at 969-70. Therefore, the use of mace, tear gas or pepper spray by prison officials is not a per se violation of a prisoner's constitutional rights when used appropriately." *Townsend v. Anthony*, C/A No. 0:03-2528-RBH-BM, 2006 WL 2076920, at *9 (D.S.C. July 24, 2006). However, whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." *Bailey,* 736 F.2d at 969.

"There are three general categories in which courts have held that use of pepper spray or other chemical agents may constitute excessive force:" 1) "when an officer used far more than a reasonable quantity of a chemical agent;" 2) "when a chemical agent was used without a prior

7

verbal order, or after a prisoner had been subdued or had become compliant;" and 3) "when, after a prisoner is pepper sprayed (even for a legitimate reason), officers then withhold appropriate medical attention." *Wheeler v. Fritz*, C/A No. RBD-14-2727, *10, 2015 WL 4485436 (D. Md. July 20, 2015) (Citations omitted).  Moreover, an inmate may maintain an Eight Amendment claim of excessive force where he is subjected to chemical munitions and not allowed to wash or decontaminate himself.  *Mann v. Failey,* 578 Fed. App'x 267, at * 5-6 (4th Cir. 2014); *see also Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir.1996).

Defendants argue that, "taken in the light most favorable to the Plaintiff, if the Court believes that Plaintiff was not examined at the scene as records indicate, by [P]laintiff's admission, only a few hours elapsed before water to the cells was turned back on [(Compl.1 at 5)]."  However, it is not entirely clear how long the water remained off.   Plaintiff alleges the water was turned back on later that night and the incident occurred at approximately 11:50 a.m. In *Mann*, the Fourth Circuit held that summary judgment was precluded when the record demonstrated that a prisoner who has been maced was in pain for several hours and officers refused to allow him to decontaminate.  *See Mann*, 578 F. App'x at 269-71. *See also Williams v. Benjamin*, 77 F.3d 756, 761, 764-68 (4th Cir. 1996) (holding, in the excessive force context, that an inmate's sworn testimony concerning correctional officers' refusal to allow him to wash or receive medical attention after being "maced" precluded summary judgment).[6]  Here, viewing the evidence in a light most favorable to Plaintiff, Plaintiff was sprayed with chemical munitions, and denied medical treatment, and denied the opportunity to rinse off for at least several hours. Similar to *Mann*, there is a genuine issue of material fact that precludes the

---

[6]The court notes that Plaintiff admits he had a half cup of water left over when he was given his medications.  (ECF No. 38-1 at 2, Pl.'s Aff. at 2).   The court does not think that such a small amount of water would have been sufficient for plaintiff to decontaminate himself following being sprayed with 99 grams of chemical munitions.

8

granting of summary judgment on this claim.

Additionally, the court notes that Plaintiff also alleges he was beaten and kicked by Defendants. Defendants make arguments relying almost exclusively on their versions of the facts provided in Lt. Marquez and Lt. Kirkland's affidavits, which are quite different from Plaintiff's version. Defendants ignore the sworn testimony of Plaintiff in his Complaint and affidavits, which the court is obligated to accept as true at the summary judgment stage. *See Mann*, 578 F. App'x at 272 n.2 ("[T]he record could defeat summary judgment even if the evidence consisted exclusively of so-called 'self-serving' declarations from [a prisoner] himself. It is well settled that we may not, at summary judgment, discount viable, material evidence on the ground that it was offered by a plaintiff with a troubled past . . . . [T]his rule is acutely necessary in cases with pro se prisoner plaintiffs, where events take place with only prison guards present, and an inmate has little control of his situation and movement, and few means of establishing facts, other than recounting evidence himself." (internal alterations, citation, and quotation marks omitted)).[7] Based on the foregoing, the court finds there is a genuine issue of material facts and Defendants' summary judgment motion on Plaintiff's excessive force claims is denied.

### 2. Deliberate Indifference to Medical Needs[8]

Plaintiff alleges that he was not provided any medical treatment after Defendants sprayed

---

[7] The reliability of the documentary evidence in the record depends on the credibility of the authors and is not the kind of evidence that "blatantly contradict[s]" or "utterly discredit[s]" Plaintiff's version of events such that no reasonable jury could believe it. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

[8] Although Plaintiff did not bifurcate his allegations into separate excessive force and inadequate medical care claims, he is entitled to have his pro se complaint liberally construed.

9

pepper spray into his eyes and ears. (Compl. at 5). Plaintiff also alleges that, despite repeated request for medical treatment from Defendant guards and nurses, he was denied medical treatment during the days immediately following the May 25th incident and for months afterwards, and "[s]till to this present day." (Compl. 3-4, 6).

In *Estelle v. Gamble*, the Supreme Court recognized a claim for deliberate indifference to serious medical needs under § 1983. 429 U.S. 97, 104 (1976). Such a claim is cognizable "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). "Deliberate indifference is a very high standard, and a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999).

Defendants allege that Plaintiff alleges only a denial of the medical attention he wanted. (Defs.' Objections at 3). Defendants notes that in his response to their summary judgment motion, Plaintiff admits there was a nurse on the scene when the force was used (ECF No. 38 at 2), and simply contends it was a different nurse than the one who entered the encounter in his medical records. *Id.* However, in his response to the summary judgment motion, it is apparent Plaintiff is alleging that while there was a nurse present on the day of the incident, she did not examine him and, furthermore, he states that the nurse who was present was not the nurse who entered the encounter in the medical record. *Id.* Plaintiff alleges that the medical entry was falsified. (Objections at 3).

Ordinarily, broad statements that medical records were falsified are insufficient to create a genuine issue of fact. *See Legg v. S. Health Partners*, C/A. No. 1:12-481-MGL, 2013 WL

10

474804, at *4 (D.S.C. Feb.7, 2013). However, in this case, there is more than a mere broad allegation. The medical encounter was not entered until almost two (2) months after the incident date and a mere six days after Plaintiff's grievance was forwarded to the Inmate Grievance Branch for possible review. (ECF No. 1-1 at 1). Defendants have not provided any reason for the two-month delay in entering the entry into Plaintiff's medical records. Moreover, while Defendants submitted an affidavit of the records custodian authenticating the medical records as a whole, Defendants have not submitted an affidavit from Nurse Hubbard averring that she did, in fact, examine Plaintiff on May 25, 2012. Additionally, the portion of the Use of Force form dated May 25, 2012, which is to be filled out by a qualified medical staff member to document injuries and treatment following a use of force, is blank. (ECF No. 31-5). Finally, the court notes that the medical encounter entry reflects Plaintiff was seen by Nurse Hubbard at 9:00 p.m. - over nine (9) hours after Plaintiff was sprayed with the pepper spray. (ECF No. 31-8 at 4). Here, on the record currently before the court, the court cannot conclude that a rational fact finder would necessarily conclude that the medical records definitively negate Plaintiff's allegations regarding the May 25th incident. There is enough evidence to create a genuine issue of material fact as to whether a nurse examined Plaintiff on May 25th and, if so, whether a 9-hour delay in treatment constitutes a deliberate indifference to Plaintiff's medical needs.

Because the court is obligated to accept Plaintiff's version of events as true for purposes of ruling on Defendants' summary judgment motion, and because that version establishes genuine issues of material fact as to whether Defendants were deliberately indifferent to Plaintiff's medical needs, the court denies Defendants' summary judgment motion as to this claim. Although a jury may well discredit Plaintiff's version of events at trial, the court may not make that determination at the summary judgment stage. *See, e.g., Smith v. Ray*, 781 F.3d 95, 106 (4th Cir. 2015) ("[I]t is the jury's role, not ours, to decide whose version of facts is

correct."); *see also Mann*, 578 F. App'x at 275.

### 3. Deprivation of Property// Denial of Religious Freedom Claims

In his Complaint, Plaintiff alleges Defendants "threw out" his Bible and other books. (Compl. at 3). Plaintiff alleges not only a deprivation of property claim, but he also specifically alleges a denial of religious freedom claim based upon the confiscation of his Bible. (Compl. at 1, 3). In their motion for summary judgment, Defendants argued that under *Turner v. Safly*, 482 U.S. 789 (1987), Plaintiff has failed to state a constitutional claim for the deprivation of his books. The magistrate judge agreed and analyzed this strictly as a deprivation of personal property claim under *Turner*, and, relying solely on Lt. Marquez's affidavit, concluded that Plaintiff could simply receive his confiscated books by exchanging other property in his cell for the stored property. (Report at 8- 9).

In his affidavit, Lt. Marquez avers that there is a limit as to the number of books an inmate in SMU may possess and that if books were taken from Plaintiff, they were placed in his property and available to him when he returned to the general population or when possession of them would not exceed the maximum allowed. (ECF No. 31-3 ¶¶ 4,5). Defendants did not file a copy of the SCDC policy regarding the possession of books and Bibles, or other religious books, by SMU inmates, and Lt. Marquez does not state what the maximum number was at the time of this incident. In his objections, Plaintiff contends that on the day of this incident, he had only his Bible and two (2) other books in his cell, and that he was not over the limit. (Pl.'s Objections 1, 3).

The court finds that there is question of fact as to what the maximum number of books was for SMU inmates at the time of this incident, and whether Plaintiff's possession of a Bible and two other books violated that policy. While the failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation, *Keeler v. Pea*, 782

F.Supp. 42, 44 (D.S.C. 1992), if there is a prison policy that restricts an SMU inmate's possession of a Bible or other religious book or allows for the confiscation of an inmate's Bible or other religious book, the court needs to determine whether this policy violates Plaintiff's constitutional right to freedom of religion.[9] The First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise thereof." U.S. Const. amend I.; *Cruz v. Beto*, 405 U.S. 319, 322 (1977). To prove a violation of this right, an inmate must first state facts sufficient to show that (1) he holds a sincere belief that is religious in nature; (2) the prison regulation imposes a substantial burden on his right to free exercise of his religious beliefs; and (3) the regulation is not "reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quotation and citation omitted). Based on the record currently before the court, the court denies Defendants summary judgment on Plaintiff's deprivation of property and denial of religious freedom claims.

## IV. Conclusion

Based on the foregoing, the court adopts the Report (ECF No. 39) only as to the recommendations that Plaintiff's § 1983 claims for money damages against Defendants in their official capacities are barred pursuant to Eleventh Amendment Immunity and that Defendants are not entitled to qualified immunity. The court **DENIES** Defendants summary judgment on the excessive force, denial of medical care, deprivation of property, and denial of religious

---

[9]The court highly doubts there was an SCDC policy at the time of this incident which allowed for the confiscation of an inmate's Bible or other religious book, and takes judicial note of a recent action, in which the court stated that SCDC Policy allows inmates in SMU to possess one religious book, such as a Bible or Qur'an, and one other book or magazine. *Scott v. Miro*, C/A No. 0:11-cv-3169-RBH, 2014 WL799099, *2 (D.S.C. Feb. 27, 2014).  In *Scott*, the plaintiff was arguing the SCDC policy was unconstitutional. Whereas, here, Plaintiff appears to be arguing that the SCDC policy was not followed, *and* that the confiscation of his books and Bible was not done pursuant to policy and was unconstitutional.

13

freedom claims. Accordingly, Defendants' Summary Judgment (ECF No. 31) is **DENIED in part and Granted in part.**

    **IT IS SO ORDERED.**

s/<u>Timothy M. Cain</u><br>United States District Judge

Anderson, South Carolina
September 2, 2015

### NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

14